579 P.2d 573

Lupe A. KLEIN, Rita M. Ferguson, Blanche N. Johnson, Ruth Freeman, Leatrice O. Corner, Lettie Dee Moore, and Percy L. Olson, Appellants,

v.

PIMA COUNTY LAW ENFORCEMENT MERIT SYSTEM COUNCIL, a public body and William Coy Cox, Sheriff of Pima County and party in interest, Appellees.

No. 2 CA–CIV 2708.

Court of Appeals of Arizona, Division 2.

March 2, 1978.

Rehearing Denied April 5, 1978.

Review Denied May 23, 1978.

**70**

Henry J. Severyn, Tucson, for appellants.

Stephen D. Neely, Pima County Atty., by Howard Baldwin and Rita Vatter, Deputy County Attys., Tucson, for appellees.

## OPINION

HOWARD, Judge.

The facts, which are not in dispute, are as follows. Prior to July 19, 1969, each of the appellants was appointed in writing as a deputy sheriff of Pima County by the then sheriff, Waldon V. Burr. According to Sheriff Burr they had the power of arrest and the right to enforce all the Arizona statutes in the same manner as he had. Sheriff Burr appointed all his employees as deputy sheriffs because of the small number of employees on his staff which required interchanging of deputies in order to cover departments which became understaffed for any reason. Furthermore, Sheriff Burr being under the impression that all of his employees had to be deputized, deputized all personnel in his department, regardless of job function. This included cooks and secretaries.

As for the specific duties of appellants, Klein, Moore, Johnson and Ferguson—they were in charge of the female prisoners in that part of the county jail in which they were confined; they transported female prisoners to the state prison; they took custody of female mental patients and delivered them to the county and state hospitals pursuant to court orders; and took custody of prisoners in other states under extradition proceedings for transfer to Arizona. Olson worked in the county jail. He transported and guarded prisoners who were on work details outside the county jail. Freeman and Corner worked on different shifts and were in charge of the county jail kitchen. Each supervised approximately ten prisoners who were on work detail.

A.R.S. § 41–1821 et seq. became effective on June 28, 1968. It authorized establishment of the Arizona Law Enforcement Officer Advisory Council (ALEOAC). This council has the power and duty to prescribe reasonable minimum qualifications for offi-

cers to be appointed to enforce the laws of the state and the political subdivisions thereof. A.R.S. § 41–1823 provides that no minimum qualifications adopted are to be effective as to the recruitment of new police officers until six months after adoption by ALEOAC, filed with the Department of Public Safety and sent by registered mail to the chief executive officer of every law enforcement agency in the state. It further provided that such minimum qualifications are not to apply to the retention of officers currently holding valid appointments until three years after their adoption and filing as prescribed in the statutes. ALEOAC did not file any rules and regulations until 1974 and these rules and regulations contained no minimum qualifications. However, ALEOAC did have a set of qualifications it was using in spite of the filing and mailing requirements of the statute.

On July 11, 1969, the legislature enacted a merit system for law enforcement officers. A.R.S. § 38–1001 et seq. The Board of Supervisors established the merit system council authorized under the foregoing statutes on April 21, 1970. Sec. 38–1005 provides:

"All law enforcement officers holding a position on the effective date of this article shall be continued in their respective positions without examination, until removed from such positions, under the provisions of the merit system established pursuant to this article."

A "law enforcement officer" is defined under A.R.S. § 38–1001(4)(a) as a regularly appointed and paid deputy sheriff of a county.

After the merit system statutes became effective, Pima County had an independent study made of its employees, known as the Jacobs Study, and the personnel department made a reclassification of all the employees. Whether one was deputized or not was immaterial in making the reclassification.

Sheriff Burr retired in September of 1971 and Michael Barr replaced him as acting sheriff until William Cox was appointed as Sheriff of Pima County in November of 1971. During Michael Barr's term, he removed the appellants' commissions. Sheriff Cox did not consider them law enforcement officers because they had not received the training to function as peace officers and because of the reclassification that was made as a result of the Jacobs Study.

On August 6, 1973, appellants filed a petition for reclassification and reinstatement to their positions as deputy sheriffs with the Pima County Law Enforcement Merit System Council which refused to accept jurisdiction to hear their appeals on the grounds that they were not classified law enforcement officers.

Appellants then sought review by special action in superior court. After a hearing, the court upheld the action of the Pima County Law Enforcement Merit System Council. This appeal followed.

■ Appellants contend the Pima County Law Enforcement Merit System Council erred when it found that they were not law enforcement officers and therefore not entitled to an appeal under A.R.S. § 38–1004. We agree.

When appellants were "reclassified" by acting Sheriff Barr, they were law enforcement officers within the definition as set forth in A.R.S. § 38–1001. Prior to the enactment of A.R.S. § 41–1821 et seq. there was no law which purported to authorize the setting of minimum qualifications for law enforcement officers. Since there were persons in local law enforcement agencies who did not have the required training as law enforcement officers, A.R.S. § 41–1823 was enacted in order to allow those officers already in the law enforcement agencies up to three years to meet the minimum qualifications which might be promulgated by the Arizona Law Enforcement Officer Advisory Council. It is clear in this case that no minimum qualifications were legally in existence when appellants appealed to the Pima County Law Enforcement Merit System or when they were "reclassified". Since they were law enforcement officers at the time of attempted reclassification, that attempt was of no avail because the

sole power to classify or reclassify all positions occupied by law enforcement officers rested solely in the Pima County Law Enforcement Merit System Council and not in the county personnel office or acting Sheriff Barr.

Appellees, in seeking to uphold the decision of the trial court claim that appellants were not "law enforcement officers" within the meaning of the statute for four reasons: (1) They did not have the training or qualifications required by ALEOAC; (2) they were not acting as deputy sheriffs; (3) they were not paid the same salary as deputy sheriffs, and (4) they were never reappointed by Sheriff Burr after he was reelected.

Appellees' first contention ignores the purpose of the "grandfather clause" in A.R.S. § 41–1823. If ALEOAC had followed the statute appellants would have been given a chance to meet the minimum qualifications. This clause cannot be defeated by simply failing to follow the statutory procedure.

■ There was testimony before the merit system council by personnel familiar with the job descriptions and functions of appellants that they could not be considered "law enforcement officers". These personnel experts believed that only the patrol officer or a functional equivalent should be classified as a law enforcement officer. This testimony ignores the statutory definition contained in A.R.S. § 38–1001(4)(a), to-wit: " . . . A regularly appointed and paid deputy sheriff . . . ." Further it ignores the testimony of former Sheriff Burr as to the powers he conferred upon appellants.

As for the fact that appellants were never paid as deputy sheriffs, we believe appellees are misconstruing A.R.S. § 38–1001(4)(a). The purpose of the requirement that the deputy sheriff be a " . . . paid deputy sheriff . . . " is to eliminate honorary deputy sheriffs from the merit system. There is no requirement under the statute that the deputy sheriff receive a deputy sheriff's salary, but only that he be paid.

Appellees contend that appellants were not deputy sheriffs when they were reclassified because they were not reappointed by Sheriff Burr when he was reelected. There is dicta in *Trinkle v. State*, 59 Tex.Cr.R. 257, 127 S.W. 1060 (1910) for the proposition that if a sheriff is reelected, a new appointment is necessary to continue a deputy in office. Whether such a requirement is necessary in Arizona is problematical. There were no statutes in Arizona which imposed such a requirement on the reelected sheriff. In fact, Sheriff Burr did not reappoint any of his deputies after his reelection. It is therefore, clear that his failure to reappoint appellants was not because he did not consider them to be law enforcement officers. Furthermore, Sheriff Burr sent appellants' names to ALEOAC for the purpose of having them "grandfathered". Since appellants were deputy sheriffs they were "public officers" as defined by A.R.S. § 38–101.

If a reappointment by Sheriff Burr was necessary after his reelection in 1968, appellants were still de jure deputy sheriffs and thus " . . . regularly appointed and paid deputy sheriffs . . . " by virtue of A.R.S. § 38–295(B) which states that every officer shall continue to discharge the duties of his office, although his term is expired, until his successor has qualified.

The judgment is reversed and the cause remanded with directions to enter an order requiring the Pima County Law Enforcement Merit System Council to accept jurisdiction of appellants' appeals.

RICHMOND, C. J., and HATHAWAY, J., concur.